UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| MILICA BARJAKTAROVIC,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, et al.,<br><br>Defendants. | CIV. NO. 24-00249 LEK-WRP |

**ORDER: DISMISSING PLAINTIFF'S AMENDED COMPLAINT WITHOUT PREJUDICE, EXCEPT AS TO THE CLAIMS AGAINST DEFENDANT UNITED STATES DEPARTMENT OF JUSTICE, WHICH ARE DISMISSED WITH PREJUDICE; RESERVING RULING ON PLAINTIFF'S APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS AND ON PLAINTIFF'S APPLICATION FOR PERMISSION TO PARTICIPATE IN ELECTRONIC FILING; AND DENYING PLAINTIFF'S OTHER MOTIONS AS MOOT**

On January 21, 2026, pro se Plaintiff Milica Barjaktarovic ("Plaintiff") filed an amended complaint. [Dkt. no. 34.] Plaintiff filed a document on February 17, 2026, which presents additional arguments and purports to correct certain factual allegations made in the amended complaint. [Dkt. no. 43.] This Court liberally construes docket number 34 as Plaintiff's Amended Complaint and docket number 43 as Plaintiff's Supplement to the Amended Complaint ("Supplement"). See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). This Court considers the Supplement alongside the Amended Complaint.

Also on January 21, 2026, Plaintiff filed: a document requesting various forms of relief ("1/21 Motion"); a motion requesting a temporary restraining order ("1/21 TRO Motion"); an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"); and an Application for Permission to Participate in Electronic Filing (E-File) (Pro Se Non-Prisoner) ("E-Filing Application"). [Dkt. nos. 35, 38, 36, 37.] On January 23, 2026, Plaintiff filed the "Motion to Accept My Ammended [sic] Complaint Mailed on January 20, 2026 and Received on January 21, 2026" ("1/23 Motion"). [Dkt. no. 39.] On February 17, 2026, Plaintiff filed the "Urgent Motion to Intervene" ("2/17 Motion"). [Dkt. no. 41.] Plaintiff filed a second "Urgent Motion to Intervene" on March 4, 2026 ("3/4 Motion"). [Dkt. no. 45.] On March 18, 2026, Plaintiff filed a motion seeking, among other things, this Court's intervention in various proceedings, a temporary restraining order, and an injunction ("3/18 Motion"). [Dkt. no. 47.]

For the reasons set forth below, the Amended Complaint is dismissed without prejudice, except as to Plaintiff's claims against the United States Department of Justice ("DOJ"), which are dismissed with prejudice. In other words, Plaintiff will be given the opportunity to file a second amended complaint to try to cure the defects in the Amended Complaint that are identified in this Order. Plaintiff, however, will not be allowed to assert

claims against the DOJ in the second amended complaint. This Court will rule on the IFP Application and the E-File Application if any portion of the second amended complaint survives the screening process. Plaintiff's other motions are denied as moot.

<u>BACKGROUND</u>

The Amended Complaint names the following parties as defendants: the State of Hawai`i ("the State"); the Association of Apartment Owners of Mokuleia Surf ("AOAO"); current and past AOAO board members Kateryna Nezhura, Lorne Jackson, Richard Yniguez Jr., and Joannie Lum Torio; All Community Management LLC ("ACM"); ACM's sole proprietor, Bryn James; Porter Kiakona Kopper LLP ("PKK"); PKK attorneys, Kapono F.H. Kiakona, Michael C. Biechler, Jamie Mariaga, Dallas Walker, Noele B. Guerrero, and Sara M. Nakayama; Roeca Luria Shin LLP ("RLS"); RLS attorneys, James Ferguson, James Shin, and Jodie Roeca; Dispute Prevention and Resolution Inc. ("DPR"); DPR arbitrator, Gail Nakatani ("Nakatani"); Commissioner Wayne K.T. Mau; and Doe Defendants 1-50 (collectively "Defendants"). [Amended Complaint at PageID.3394-99.]

On June 25, 2024, this Court issued an order that stayed the instant case and denied then-pending motions as moot

("6/25/24 Order"). [Dkt. no. 15.[1]] The instant case was administratively closed by an entering order filed on June 27, 2024. [Dkt. no. 16.] The stay was lifted on November 21, 2025. See Minute Order – EO: Order Granting in Part and Denying in Part Plaintiff's Requests in Plaintiff's Letter Filed on November 10, 2025, filed 11/21/25 (dkt. no. 31) ("11/21/25 EO"), at PageID.3386.

The 6/25/24 Order also dismissed certain claims in the Complaint for a Civil Case ("Complaint"), [filed 6/7/24 (dkt. no. 1),] including claims against the DOJ, and granted Plaintiff leave to file an amended complaint to amend her claims against the DOJ. See 6/25/24 Order at 16. In an entering order filed on December 19, 2025 ("12/19/25 EO"), this Court set a January 16, 2026 deadline for Plaintiff to file in an amended complaint. [Dkt. no. 33 at PageID.3392.]

On July 18, 2025, while the instant case was stayed, Plaintiff filed a new complaint in this district court. See Barjaktarovic v. State of Hawai`i, et al., CV 25-00299 LEK-RT ("CV 25-299"), dkt. no. 1. On August 27, 2025, this Court issued an order ruling that CV 25-299 was duplicative of the instant action, and dismissed CV 25-299 without prejudice to the pursuit of the claims that Plaintiff attempts to assert in the current

---

[1] The 6/25/24 Order is also available at 2024 WL 3164704.

action, but without leave to file an amended complaint in CV 25-299 ("CV 25-299 8/27/25 Order"). See id., dkt. no. 19.[2] Because of the similarities in the claims alleged in the instant action and in CV 25-299, this Court incorporates the background from the 6/25/24 Order and the CV 25-299 8/27/25 Order and supplements the background in this Order as necessary.

Plaintiff's litigation history against Defendants is extensive, complex, and spans multiple years. See Amended Complaint at PageID.3403-04 (providing an overview of cases that Plaintiff has brought against some of the Defendants). The litigation has taken place in state and federal court, at both trial and appellate levels, and has also involved arbitration proceedings. See 6/25/24 Order at 3-5 (summarizing some of Plaintiff's various actions against Defendants); see also 11/21/25 EO at PageID.3386 (discussing the Hawai`i Supreme Court's rejection of Plaintiff's application for a writ of certiorari). Plaintiff purports to present "new, related claims that have arisen since 2024" in the Amended Complaint. See Amended Complaint at PageID.3401.

Plaintiff allegedly owns two units at the Mokuleia Surf condominium complex: Unit 104, which she claims to have owned since 2004; and Unit 301, which she claims to have owned

_____

[2] The CV 25-299 8/27/25 Order is also available at 2025 WL 2466668.

since 2017. See id. at PageID.3404. The core controversy regards physical modifications made to Unit 301. See, e.g., id. at PageID.3418-36 (allegations related to issues concerning and arising out of the modifications to Unit 301 and the litigation over those issues). Plaintiff alleges that the original modifications to Unit 301 were completed in 2002 by a previous owner, Michael Raab ("Raab"), a former AOAO board member. [Id. at PageID.3440.] Plaintiff asserts that the AOAO did not challenge the modifications to Unit 301 throughout the occupancy of Raab and three other different owners that lived in the unit before she purchased it. [Id.]

Plaintiff claims that the AOAO challenged the modifications after she purchased the unit because of her status as a "whistleblower." [Id. at PageID.3441.] She also claims that, while she was targeted for these pre-existing modifications, the AOAO ignored or approved similar modifications in at least six other units, which were owned by AOAO board members or their supporters. [Id. at PageID.3441-42.] Plaintiff further claims that, on December 6, 2010, the AOAO board "officially allowed" most of the modifications to Unit 301 to remain. See id. at PageID.3441. Plaintiff asserts that in March 2018, the AOAO owners voted to "grandfather" the modifications to Unit 301 and that this vote was recorded in meeting minutes. [Id. at PageID.3442 (emphasis omitted).] She

contends that the AOAO board fraudulently concealed or ignored these minutes in order to pursue litigation against her for the modifications. See id.

In 2020, the AOAO filed an action against Plaintiff in the Circuit Court of the First Circuit, State of Hawai`i ("circuit court"), challenging the modifications to Unit 301 ("Modification Lawsuit"). See id. at PageID.3413-14; see also Ass'n of Apartment Owners of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-20-0000850 (Hawai`i Cir. Ct.),[3] Final Judgment, filed 11/15/22 (dkt. no. 231) ("Circuit Court Final Judgment"). Plaintiff characterizes the Modification Lawsuit as a secretly filed, frivolous SLAPP action[4] initiated by the AOAO's attorneys, PKK, without proper approval from the AOAO's board. See, e.g., Amended Complaint at PageID.3406-07; id. at PageID.3413-14.

The Modification Lawsuit was submitted to arbitration before Nakatani. See id. at PageID.3403. Plaintiff describes the arbitration as an "inquisition" or "slave trial" characterized by bias, corruption, fraud, and procedural misconduct. See id. at PageID.3407-08. Nakatani issued an award in favor of the AOAO

---

[3] The Modification Lawsuit circuit court case docket will be referred to as AOAO of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-20-0000850.

[4] A SLAPP action is a strategic lawsuit against public participation. Ohana Mil. Cmtys., LLC v. Barber, CIVIL NO. 18-00042 KJM, 2018 WL 11536391, at *9 (D. Hawai`i Nov. 30, 2018) (citing HRS § 634F-1).

that Plaintiff states included approximately $277,331 in attorney's fees. [Id. at PageID.3407-08.] Plaintiff alleges the amount "was generated 'out of thin air,'" [id. at PageID.3405,] but she also claims the amount "matched the value of [her] condo Unit 301 at that time," [id. at PageID.3414].

Plaintiff moved to vacate the arbitration award, but the circuit court confirmed the arbitration award in its Final Judgment. See Circuit Court Final Judgment at pg. 2. Plaintiff alleges that the circuit court "rubberstamped" the arbitration award[5] and entered the Circuit Court Final Judgment without properly examining her evidence. [Amended Complaint at PageID.3408.] She claims Judge Lisa Cataldo and Judge John Tonaki, both of whom presided over the Modification Lawsuit, "copycatted" arguments from the AOAO's attorneys' briefing and intentionally violated state law. [Id. at PageID.3408.]¶

Plaintiff subsequently appealed the Circuit Court Final Judgment to the Intermediate Court of Appeals of the State of Hawai`i ("ICA"). See Ass'n of Apartment Owners of Mokuleia

_____

[5] At some parts in the Amended Complaint, Plaintiff alleges that the Circuit Court Final Judgment award was $277,311. See, e.g., Amended Complaint at PageID.3405. At other parts, Plaintiff alleges that the Circuit Court Final Judgment award was $277,331. See, e.g., id. at PageID.3406. The Circuit Court Final Judgment award was $277,330.99. [Circuit Court Final Judgment at 3.] Thus, this Court will refer to $277,331 as the amount awarded in the Circuit Court Final Judgment.

Surf v. Barjaktarovic, No. CAAP-23-0000018.[6] On June 30, 2025,
the ICA issued its Summary Disposition Order affirming the
Circuit Court Final Judgment, and on September 4, 2025, the ICA
entered its final judgment in favor of the AOAO ("ICA Final
Judgment"). [AOAO of Mokuleia Surf, No. CAAP-23-0000018 (dkt.
nos. 473, 491).] Plaintiff alleges that the proceedings before
the ICA were unlawful because the proceedings were presided over
by Judge Keith Hiraoka ("Judge Hiraoka"), whom she alleges was a
former partner at RLS. See Amended Complaint at PageID.3458. She
asserts that Judge Hiraoka should have recused himself due to
his affiliation with RLS and that his refusal to recuse himself
presents a conflict of interest, which "invalidates all
proceedings" before the ICA. See id. at PageID.3458-59. She
claims the ICA was biased, ignored her evidence, and affirmed
the circuit court's judgment based on, among other things,
"fraudulent justification." See id. at PageID.3458-62.

Plaintiff petitioned the Hawai`i Supreme Court for a
writ of certiorari. She alleges that the Hawai`i Supreme Court
ignored her objections that the AOAO had submitted a "fraudulent
opposition" to her petition. [Id. at PageID.3423.] On

---

[6] The ICA case docket of the Modification Lawsuit will be
referred to as AOAO of Mokuleia Surf v. Barjaktarovic, No. CAAP-
23-0000018.

November 4, 2025, the Hawai`i Supreme Court rejected Plaintiff's petition. See 11/21/25 EO at PageID.3386 (citation omitted).

As the proceedings before the ICA and the Hawai`i Supreme Court were taking place, the AOAO initiated foreclosure proceedings against Plaintiff ("Foreclosure Lawsuit"). See Ass'n of Apartment Owners of Mokuleia Surf v. Barjaktarovic, No. 1CCV-23-0001047.[7] On June 23, 2025, the circuit court filed an order, which granted summary judgment in favor of the AOAO, and that directed a decree of foreclosure and an order of sale be entered as final judgment in the AOAO's favor ("Foreclosure Order"). [Id., dkt. no. 485, at 12-13.]

The Foreclosure Lawsuit is presided over by Judge James H. Ashford ("Judge Ashford"). See id. at 17 (Judge Ashford's signature on the Foreclosure Order). Plaintiff alleges a series of illicit acts occurred during the Foreclosure Lawsuit. First, she claims the AOAO filed a "Motion to Examine Judgment Debtor" in the Modification Lawsuit to conduct a "theft probe" of Plaintiff's assets. Amended Complaint at PageID.3424; see also AOAO of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-20-0000850, Ex Parte Motion for Examination of Judgment Debtor Milica Barjaktarovic, filed 4/22/24 (dkt. no. 414) ("Examination

---

[7] The Foreclosure Lawsuit circuit court case docket will be referred to as AOAO of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-23-0001047.

Motion"). The circuit court granted the Examination Motion, which Plaintiff claims "served as a substitute for serving foreclosure summons," and led to "illicit garnishing" of her assets. Amended Complaint at PageID.3415; see also AOAO of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-20-0000850, Order Granting Plaintiff's Ex Parte Motion for Examination of Judgment Debtor Milica Barjaktarovic, filed 8/20/24 (dkt. no. 486) ("Foreclosure Lawsuit 8/20/24 Order"). Plaintiff claims that "[t]he Foreclosure Court ignored the illicit garnishing" effectuated through the grant of the Examination Motion, continued with the Foreclosure Lawsuit "by serving summons via publication," and denied Plaintiff's objections asserting defective service of the summons. [Amended Complaint at PageID.3424.]

Second, Plaintiff alleges that Judge Ashford granted the AOAO's Motion for Summary Judgment by "by using fraud and procedural misconduct, accusing [Plaintiff] of not having evidence, and ignoring the Counterclaim." [Id. at PageID.3425.] Plaintiff also alleges there were other irregularities in the Foreclosure Lawsuit that rendered the foreclosure invalid. See id. at PageID.3408-09.

Third, Plaintiff also alleges that Judge Ashford and Mau conspired to sell Unit 301 at an artificially low price of $100,000 by selling the unit through a non-credit bid process,

with the AOAO as the only registered bidder, and without hosting open houses. See, e.g., id. at PageID.3409, PageID.3427. Plaintiff claims that these actions, and others, amount to fraud. See id. at PageID.3425-26.

Finally, she claims this low bid created an "artificial deficiency" of approximately $300,000, see id. at PageID.3427, which she speculates the AOAO intends to satisfy by seizing and selling Unit 104, see id. at PageID.3416. Plaintiff has appealed the Foreclosure Order. See AOAO of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-23-0001047, Notice, filed 7/22/25 (dkt. no. 559); see also Ass'n of Apartment Owners of Mokuleia Surf v. Barjaktarovic, No. CAAP-25-0000522.[8]

Plaintiff characterizes these events and judicial proceedings as the orchestrated efforts of an organized crime and racketeering group. See Amended Complaint at PageID.3428, ("The implicated do not act in the interest of the law, but in self-serving interest. They act in conspiracy and collaboration to obstruct evidence, ignore the law, deny civil rights and due process under the color of law, and extort property and assets. They engage in civil racketeering acts, and act as an organized crime and racketeering group."). She alleges that the AOAO,

---

[8] The ICA case docket of the Foreclosure Lawsuit will be referred to as AOAO of Mokuleia Surf v. Barjaktarovic, No. CAAP-25-0000522.

members of the AOAO board, property managers, attorneys, a state-funded agency, Nakatani, and state judges have formed this criminal enterprise to steal approximately "$1.5 million under the pretense of the law." [Id. at PageID.3405.]

The Amended Complaint is convoluted; it is difficult to discern the exact relief that Plaintiff seeks. Plaintiff does, however, clearly seek injunctive relief to stop the Foreclosure Lawsuit. See id. at PageID.3401 ("I request an Emergency Motion for Preliminary Injunction and/or Temporary Restraining Order (TRO) so that the Federal District Court stops the foreclosure."). Liberally construing the Amended Complaint, Plaintiff also appears to seek: 1) injunctive or declaratory relief to vacate, dismiss, or void orders made by the state courts, including the Circuit Court Final Judgment; see id. at PageID.3410, PageID.3423; 2) monetary damages; see id. at PageID.3410 ("[T]his Complaint asks for compensation."); and 3) any other appropriate relief; see id. at PageID.3411.

<strong><u>STANDARD</u></strong>

"Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates he is unable to pay." Smallwood v. Fed. Bureau of Investigation, CV. NO. 16-00505 DKW-KJM, 2016 WL 4974948, at *1 (D. Hawai`i Sept. 16, 2016) (citing 28 U.S.C. § 1915(a)(1)).

13

> The Court subjects each civil action commenced pursuant to Section 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to *sua sponte* dismiss an *in forma pauperis* complaint that fails to state a claim);[9] Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

Id. at *3.

In addition, the following standards apply in the screening analysis:

> Plaintiff is appearing pro se; consequently, the court liberally construes her pleadings. Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam))). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th. [sic] Cir. 2000).

> Despite the liberal pro se pleading standard, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on its own motion. See Omar v.

---

[9] Lopez has been overruled, in part, on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc).

> Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); see also Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged). . . . "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." United States v. Marks, 530 F.3d 799, 810 (9th Cir. 2008) (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). The assumption is that the district court lacks jurisdiction. See Kokkonen, 511 U.S. at 377. Accordingly, a "party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

Flores v. Trump, CIVIL 16-00652 LEK-RLP, 2017 WL 125698, at *1 (D. Hawai`i Jan. 12, 2017) (some alterations in Flores) (some citations omitted).

## DISCUSSION

## I.   The Amended Complaint

The Ninth Circuit Court of Appeals has recently stated:

> Established by Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), the Rooker-Feldman doctrine provides that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." Noel [v. Hall], 341 F.3d [1148,] 1154 [(9th Cir. 2003)].

15

Rooker-Feldman also prohibits federal district courts from considering "de facto appeals" — suits in which "the adjudication of the federal claims would undercut the state ruling." Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003). Thus, "Rooker-Feldman looks to federal law to determine 'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" Id. at 900 (quoting Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996)). And when the federal action constitutes a forbidden de facto appeal of a state court judgment, the federal court "must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." Noel, 341 F.3d at 1158. "Our circuit has emphasized that '[o]nly when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play." Cooper v. Ramos, 704 F.3d 772, 778 (9th Cir. 2012) (quoting Noel, 341 F.3d at 1158).

The Rooker-Feldman doctrine "occupies 'narrow ground' and applies only in 'limited circumstances.'" Brown v. Duringer Law Grp. PLC, 86 F.4th 1251, 1253 (9th Cir. 2023) (quoting Exxon [Mobil Corp. v. Saudi Basic Indus. Corp.], 544 U.S. [280,] 284, 291, 125 S. Ct. 1517 [(2005)]. "Namely, it 'is confined to . . . cases [1] brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.'" Id. at 1254 (quoting Exxon, 544 U.S. at 284, 125 S. Ct. 1517); see generally Miroth v. County of Trinity, 136 F.4th 1141, 1148-51 (9th Cir. 2025).

Searle v. Allen, 148 F.4th 1121, 1128 (9th Cir. 2025) (some

alterations in Searle).[10]

> "Proceedings end for Rooker-Feldman purposes when
> the state courts finally resolve the issue that
> the federal court plaintiff seeks to relitigate
> in a federal forum, even if other issues remain
> pending at the state level." Mothershed [v.
> Justs. of Sup. Ct.], 410 F.3d [602,] 604 n.1
> [(9th Cir.), *as amended on denial of reh'g*
> (July 21, 2005)]. In addition, courts "pay close
> attention to the **relief** sought by the federal-
> court plaintiff" in determining whether his
> action functions as a de facto appeal. Hooper v.
> Brnovich, 56 F.4th 619, 624 (9th Cir. 2022)
> (quoting Cooper v. Ramos, 704 F.3d 772, 777-78
> (9th Cir. 2012)).

Plotkins v. Cnty. of Kaua`i, Fin. Div. Real Prop. Assessment,

CIV. NO. 24-00019 JMS-KJM, 2024 WL 1885791, at *2 (D. Hawai`i

Apr. 30, 2024). Plaintiff's Amended Complaint, while invoking

Title 42 United States Code Section 1983, see, e.g., Amended

Complaint at PageID.3403, and the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), Title 18 United States Code

Sections 1961, *et seq.*, see, e.g., id. at PageID.3400-02, is in

substance a direct attack on the final judgments of the state

courts.

Under the first prong of the Rooker-Feldman analysis,

this Court examines whether the instant action was "brought by

state-court losers." Searle, 148 F.4th at 1128 (quotation marks

---

[10] Pro se Petitioner Peyman Roshan's petition for certiorari
before the United States Supreme Court was docketed on
January 15, 2026. See Roshan v. Searle, No. 25-961.

and citation omitted). Plaintiff admits that she lost the
Modification Lawsuit, the appeal of the Modification Lawsuit
before the ICA, her attempt to seek supreme court review of the
ICA Final Judgment, and the Foreclosure Lawsuit. See, e.g.,
Amended Complaint at PageID.3406-09; PageID.3436-38. The first
Rooker-Feldman prong is therefore satisfied.

The second Rooker-Feldman prong requires that
Plaintiff's federal court action complain of injuries caused by
state court judgments. See Searle, 148 F.4th at 1128. The
Amended Complaint is replete with Plaintiff's complaints
concerning alleged injuries caused by the state courts. Indeed,
nearly every injury Plaintiff alleges in the Amended Complaint
flows directly from the judgments and orders of the state
courts. For instance, Plaintiff alleges that she was
"irreparably and significantly harmed" by the Circuit Court
Final Judgment because it "enabl[ed] the foreclosure of
[Plaintiff's] condo" as a result of the $277,331 judgment
assessed against her. See Amended Complaint at PageID.3457.
Plaintiff speculates that she may lose Unit 104 as a result of
the Foreclosure Lawsuit 8/20/24 Order and the Foreclosure Order.
See id. at PageID.3416. In short, the gravamen of Plaintiff's
Amended Complaint is that the state court judgments have
unlawfully deprived her of her property rights. The injuries she
identifies are the direct legal consequences of these state

court adjudications. Thus, the second Rooker-Feldman prong is also satisfied.

The third prong of the Rooker-Feldman analysis examines the timing of when the party who lost in state court filed the complaint in federal district court. See Searle, 148 F.4th at 1128. The Ninth Circuit has recognized that, for purposes of the Rooker-Feldman analysis, state proceedings conclude when the state court resolves the issue that the federal court plaintiff seeks to relitigate. Mothershed, 410 F.3d at 604 n.1. A federal court plaintiff "may not avoid Rooker-Feldman's bar and obtain review of adverse state court decisions in federal district court just because at least one of their cases remains pending on appeal in state court." Eicherly v. O'Leary, 721 F. App'x 625, 627 (9th Cir. 2018) (citing Worldwide Church of God v. McNair, 805 F.2d 888, 893 n.3 (9th Cir. 1986)); see also Marciano v. White, 431 F. App'x 611, 613 (9th Cir. 2011) (applying Rooker-Feldman when the plaintiff had filed an action challenging a state decision before the state court of appeals had issued a ruling); Spindler v. City of Los Angeles, No. CV 17-250-JLS(E), 2018 WL 6164796, at *12 (C.D. Cal. Oct. 2, 2018) ("Rooker-Feldman does not permit a litigant pursuing an appeal in state court to attempt to hedge his or her bets by filing an eleventh hour federal lawsuit challenging the

same state court judgment at issue in the state appeal."
(collecting cases)).

"At the core of the instant case, Plaintiff appears to be contesting the outcome of the Modification Lawsuit." [6/25/24 Order at 4-5 (citations omitted).] Plaintiff's Amended Complaint confirms that she wishes to contest the outcome of the Modification Lawsuit. See, e.g., Amended Complaint at PageID.3450-52; PageID.3456-57 (alleging various errors by the circuit court and arguing that this Court should void the Circuit Court Final Judgment); id. at PageID.3423 (asserting the Circuit Court Final Judgment "is invalid and must be voided"). Because the Circuit Court Final Judgment was filed on November 15, 2022, [Circuit Court Final Judgment at 3,] and the Complaint was filed on June 7, 2024, [dkt. no. 1,] the third prong of the Rooker-Feldman analysis is satisfied with respect to Plaintiff's claims challenging the outcome of the Modification Lawsuit.

The Amended Complaint also challenges the Foreclosure Lawsuit, and ultimately the Foreclosure Order, which authorized the auction of Plaintiff's property. See, e.g., Supplement at PageID.3661-65 (alleging various errors by the circuit court and arguing that this Court should void the Foreclosure Order); Amended Complaint at PageID.3401 (requesting "that the Federal District Court stop[] the foreclosure" because it is allegedly

"based on fraud" and "violates [Plaintiff's] federal due process rights"). The Foreclosure Order was filed on June 23, 2025. The Amended Complaint was filed on January 21, 2026, and, unlike the Complaint, challenges the Foreclosure Order. Compare generally Complaint, with Amended Complaint at PageID.3401. Plaintiff's appeal of the Foreclosure Order does not bar the application of the Rooker-Feldman doctrine. See Eicherly, 721 F. App'x at 627. Accordingly, the third prong of the Rooker-Feldman analysis is also satisfied with respect to Plaintiff's claims challenging the outcome of the Foreclosure Lawsuit.

Finally, this Court turns to the fourth prong of the Rooker-Feldman analysis. This prong scrutinizes the relief that the losing plaintiff requests from the federal district court. See Searle, 148 F.4th at 1128. The relief sought by the federal court plaintiff is a special consideration in determining whether the federal court action constitutes a de facto appeal of a state court judgment. See Hooper, 56 F.4th at 624. Here, Plaintiff requests that this Court vacate the arbitration award, [Amended Complaint at PageID.3423,] void the Circuit Court Final Judgment, [id.,] void the Foreclosure Lawsuit 8/20/24 Order, [id. at PageID.3462,] and "stop[] the foreclosure," [id. at PageID.3401]. Plaintiff is therefore inviting this Court to review the various rulings of the state courts. Such an invitation constitutes a de facto appeal of state court

decisions. See Lucas v. Wamu Mortg. Pass Through Certificates Series 2005-AR19 Tr., Case No. EDCV 20-1366 JGB (KKx), 2021 WL 1556523, at *5-6 (C.D. Cal. Mar. 26, 2021) (rejecting the plaintiff's allegations that the defendants committed fraud on various state courts as a de facto appeal of the state court's foreclosure judgments).[11] Because a ruling in Plaintiff's favor would require this Court to determine that the state courts' decisions were erroneous or invalid, her claims in the Amended Complaint are inextricably intertwined with the state courts' decisions. See Hooper, 56 F.4th at 624-25 ("Claims are inextricably intertwined if the relief requested in the federal action would effectively reverse the state court decision or **void** its ruling." (emphasis added) (citation and internal quotation marks omitted)). Plaintiff's invitation constitutes the very review of state court judgments that Rooker-Feldman forbids. Because all four prongs of the Rooker-Feldman analysis are met, this Court lacks jurisdiction to adjudicate the instant action.

Plaintiff argues that "Rocker-Feldman [sic] . . . do[es] not hold here because there is a 6-year consistent, underlying pattern of intentional systemic state-wide corruption, bad faith, fraud and procedural misconduct, and

---

[11] Lucas was affirmed by the Ninth Circuit. 2023 WL 2570394 (Mar. 20, 2023).

collusion of many players in abuse of their Oath of Office, code of conduct and mandatory laws to do unconstitutional transfer of property and extort under pretense of law, by denial of civil rights." [Amended Complaint at PageID.3402-03 (emphases omitted).] Plaintiff offers no legal support for the proposition that the Rooker-Feldman doctrine does not apply when a federal plaintiff alleges a multi-year conspiracy between private and public actors, nor is this Court aware of any authority supporting such a proposition. There are, however, a few exceptions to the Rooker-Feldman doctrine. As this district court has explained:

> The Rooker-Feldman doctrine does not apply to a general constitutional challenge, meaning one that does not require review of a state court decision. See Worldwide Church of God v. McNair, 805 F.2d 888, 891 (9th Cir. 1986). That said, if the federal constitutional claim is "inextricably intertwined" with a state court's judgment, the Rooker-Feldman doctrine does apply to bar the party's claim. See Doe & Associates Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001) ("If the federal constitutional claims presented to the district court are "inextricably intertwined" with the state court's judgment, then Doe is essentially asking the district court to review the state court's decision, which the district court may not do.").
>
> Another exception to the Rooker-Feldman doctrine is where a plaintiff alleges a cause of action for extrinsic fraud on a state court. See Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140-41 (9th Cir. 2004). "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." Id. at 1140 (quoting Wood v. McEwen, 644 F.2d 797, 801 (9th Cir. 1981)). "Extrinsic

> fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud." Id. at 1141. The exception does not apply to allegations of intrinsic fraud. Dixon v. State Bar of California, 32 Fed. Appx. 355, 356–357, 2002 WL 461719, at *1 (9th Cir. 2002). Intrinsic fraud is fraud that goes to the heart of the issues that were before the state court. See Green v. Ancora–Citronelle, 577 F.2d 1380, 1384 (9th Cir. 1978) (extrinsic fraud "prevents a party from having an opportunity to present his claim or defense in court"; it is not fraud that "goes to the very heart of the issues contested in the state court action").

Guinn v. Apartment Owners Ass'n of Makaha Valley Towers Bd. of Dirs., Civ. No. 14-00474 HG-RLP, 2015 WL 855151, at *7 (D. Hawai`i Feb. 27, 2015). Neither exception, however, applies in the instant action.

Plaintiff claims that "[f]or 6 years, the State system-wide racketeers intentionally conducted an improper process based on systemic denial of civil rights to due process and free speech, fraud, corruption, and procedural and other misconduct." [Amended Complaint at PageID.3406-07 (emphasis omitted).] At other times, Plaintiff claims that she "was denied due process in the state system. Practically all orders are against [Plaintiff] and in manifest disregard of the law. [Plaintiff] demand[s] relief from the federal court." [Id. at PageID.3411 (emphasis omitted).] Plaintiff's claims concerning her due process and other constitutional rights are premised entirely on the assertion that the state court judgments

24

themselves deprived her of her rights. Plaintiff is therefore
not mounting a general constitutional challenge. She is instead
asking this Court to review and void state court judgments which
the Rooker-Feldman doctrine prohibits. See Doe & Assocs. L.
Off., 252 F.3d at 1029.

Although Plaintiff argues the extrinsic fraud
exception to the Rooker-Feldman doctrine applies, [Amended
Complaint at PageID.3437-38,] her allegations amount only to
allegations of intrinsic fraud. Extrinsic fraud involves conduct
that prevents parties from presenting their claims in court,
whereas intrinsic fraud goes to the very heart of the issues
contested in the state action. See Iyeke v. Gardiner, Case
No. CV 23-1454 FMO (RAO), 2023 WL 4092441, at *1 (C.D. Cal.
June 20, 2023) (citing Pellegrini v. Fresno Cnty., 742 F. App'x
209, 211 (9th Cir. 2018)). Here, Plaintiff asserts "fraud upon
the court," alleging, among other things, that the AOAO
submitted false evidence, withheld evidence, and misrepresented
evidence regarding the approval of her condominium
modifications. [Amended Complaint at PageID.3436-38.] She
further alleges that the state courts "blindly copied falsities"
from the AOAO's briefs and committed procedural misconduct and
fraud in ruling against her. See id. at PageID.3430-31 (emphasis
omitted). Plaintiff also alleges that the state courts are
involved in the conspiracy against her. See, e.g., id. at

25

PageID.3399 ("[W]e are dealing with a Judicial conspiracy to deny [Plaintiff] civil rights under color of law for the purpose of extorting her property under pretense of law. The implicated Judges are from the First Circuit Court, Appellate Court and Federal District Court."). Even if Plaintiff's allegation of a conspiracy is proven, it would not show that Plaintiff was prevented from accessing the state courts or presenting her defense; in fact, the record reflects that she actively participated in the state court proceedings by filing answers, counterclaims, and motions to reconsider, among other things. See generally AOAO of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-20-0000850 (Modification Lawsuit case docket); AOAO of Mokuleia Surf v. Barjaktarovic, No. CAAP-23-0000018 (ICA case docket for the Modification Lawsuit); AOAO of Mokuleia Surf v. Barjaktarovic, Case No. 1CCV-23-0001047 (Foreclosure Lawsuit case docket); AOAO of Mokuleia Surf v. Barjaktarovic, No. CAAP-25-0000522 (ICA case docket for the Foreclosure Lawsuit). Because Plaintiff's allegations of fraud center on the submission of false evidence and the state courts' evaluation of the record, they constitute intrinsic fraud and do not trigger an exception to the Rooker-Feldman doctrine. See Mayes v. Campbell, No. 1:14-cv-02042-CL, 2015 WL 1931643, at *4 (D. Or. Apr. 28, 2015) (finding that the plaintiffs' allegation of a conspiracy involving the state court "challenge[d] the very

basis of the state judiciary's decisions," which "[i]f true, . . . undoubtedly amounts to intrinsic fraud").

In sum, no exception to the <u>Rooker</u>-<u>Feldman</u> doctrine applies. Thus, pursuant to the <u>Rooker</u>-<u>Feldman</u> doctrine, this Court lacks jurisdiction to adjudicate the instant action. The Amended Complaint must be dismissed in its entirety.

This Court, however, will provide Plaintiff a final opportunity to amend her claims. If Plaintiff chooses to file a second amended complaint must remedy the deficiencies identified in this Order. To do so, Plaintiff's second amended complaint must explain, at the very least: 1) the constitutional, statutory, or other legal rights she believes were violated; 2) each defendant's precise actions or inactions; 3) when each defendant acted or failed to act; 4) how each defendant's actions or inactions are connected to the alleged violations of Plaintiff's rights; 5) the specific injuries that Plaintiff suffered as a result of the defendants' conduct; and 6) the basis for this Court's jurisdiction. Failure to affirmatively allege that each defendant's conduct is connected to a specific injury Plaintiff suffered will likely result in such allegations being dismissed for failure to state a claim. Additionally, Plaintiff must explain how her claims and her alleged injuries are independent of the state court judgments and why the relief

she seeks does not constitute a de facto appeal of those state court judgments under the Rooker-Feldman doctrine.

If Plaintiff chooses to file a second amended complaint, she cannot incorporate any part of her original Complaint or her Amended Complaint into the second amended complaint by merely referring to portions of the original Complaint or the Amended Complaint. Further, Plaintiff may not add new claims to the second amended complaint, unless the new claims relate to the claims alleged in the Amended Complaint. New claims that are not related to the claims in the Amended Complaint are subject to dismissal. Plaintiff is warned that, although she is proceeding pro se, she must nevertheless comply with all applicable rules, including but not limited to: Federal Rule of Civil Procedure 8(a)(2) and (d)(1), which state that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "[e]ach allegation must be simple, concise, and direct"; and this Court's orders. Failure to comply with Rule 8 or this Order may result in the dismissal of the second amended complaint. See Lee v. Delta Air Lines Inc., Case No. 20-8754-CBM-(JEMx), 2022 WL 2101730, at *4-5 & n.2 (C.D. Cal. Jan. 18, 2022) (dismissing a pro se plaintiff's third amended complaint that did not comply with Rule 8 after previously giving the pro se plaintiff notice

of the requirements of Rule 8 and ordering the pro se plaintiff to comply with Rule 8 if she filed another amended complaint).

Plaintiff is cautioned that, if she chooses to file a second amended complaint, she must do so by the deadline set in this Order, unless she obtains an extension of the deadline from this Court. If no second amended complaint is filed by the deadline, the Amended Complaint, which was dismissed without prejudice, will be dismissed with prejudice. Plaintiff would then have no remaining claims in this case, and the Clerk's Office would be directed to close the case.

Plaintiff is also cautioned that, if she files a second amended complaint, the claims in the second amended complaint may be dismissed with prejudice if the second amended complaint fails to cure the defects identified in this Order.

## II. Claims Against the DOJ

Although Plaintiff will be allowed to file a second amended complaint, she will not be allowed to pursue any claims against the DOJ. Plaintiff was instructed to amend her claims against the DOJ by January 16, 2026. See 12/19/25 EO at PageID.3392. The Amended Complaint neither contains allegations against the DOJ nor names the DOJ as a defendant. See, e.g., Amended Complaint at PageID.3394-99. This district court has stated:

> [A] court may dismiss a complaint sua sponte provided the court "give[s] notice of its intention to dismiss and afford[s] plaintiffs an opportunity to at least submit a written memorandum in opposition . . . ." Reed v. Lieurance, 863 F.3d 1196, 1207 (9th Cir. 2017) (citations and internal quotation marks omitted); see also Seismic Reservoir 2020, Inc. v. Paulsson, 785 F.3d 330, 335 (9th Cir. 2015) ("[T]he district court must give notice of its sua sponte intention to dismiss . . . ."); Belanus v. Clark, 796 F.3d 1021, 1029 (9th Cir. 2015) ("A frivolous action clogs the system and drains resources regardless of whether the plaintiff pays the filing fee or proceeds in forma pauperis.").

Kahoopii v. Hawai`i, CIV. NO. 25-00019 JMS-KJM, 2025 WL 238879, at *1 (D. Hawai`i Jan. 17, 2025) (some alterations in Kahoopii).

Because Plaintiff has not named the DOJ as a defendant in the Amended Complaint, this Court has the discretion to dismiss Plaintiff's claim against the DOJ in the original Complaint with prejudice. See Yourish v. Cal. Amplifier, 191 F.3d 983, 988 (9th Cir. 1999) (holding that the plaintiff's failure to comply with a minute order setting forth the deadline to file the amended complaint gave the district court the discretion to dismiss the case under Fed. R. Civ. P. 41(b)),[12] superseded by statute on other grounds as recognized in Russell v. United States, Case No.: 21cv1029-LL-MDD, 2023 WL 2919319, at

---

[12] Federal Rule of Civil Procedure 41(b) states, in pertinent part: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."

*3 (S.D. Cal. Apr. 12, 2023). After weighing the five dismissal factors set forth in Dreith v. Nu Image, Inc., 648 F.3d 779, 788 (9th Cir. 2011),[13] this Court finds that the public interest in the expeditious resolution of the claims against the DOJ and this Court's interest in managing the docket strongly outweigh the policy favoring disposition of claims on the merits. Moreover, the DOJ will not be prejudiced by the dismissal with prejudice because it has neither been served nor made an appearance in this case, and there are no less drastic alternatives available at this time.

## III. IFP Application

This Court reserves ruling on Plaintiff's IFP Application in light of the dismissal of the Amended Complaint without prejudice. If Plaintiff chooses to file a second amended complaint, and if any portion of the second amended complaint survives the screening process, this Court will then rule upon

---

[13] The Ninth Circuit has

> identified five factors that a district court
> must consider before dismissing a case . . . :
> (1) the public's interest in expeditious
> resolution of litigation; (2) the court's need to
> manage its docket; (3) the risk of prejudice to
> the other party; (4) the public policy favoring
> the disposition of cases on their merits; and
> (5) the availability of less drastic sanctions.

Dreith, 648 F.3d at 788 (citations and internal quotation marks omitted).

the IFP Application and address whether Plaintiff is entitled to proceed in this case without prepaying fees and costs. If Plaintiff either chooses not to file a second amended complaint or if all of the claims in the second amended complaint are dismissed with prejudice, the IFP Application will be denied as moot.

## IV.   E-Filing Application

Because this Court has reserved ruling on Plaintiff's IFP Application, this Court also reserves ruling on Plaintiff's E-Filing Application. For the reasons previously stated, Plaintiff will not be allowed to utilize the district court's electronic filing system unless this Court grants Plaintiff's IFP Application. See 11/21/25 EO at PageID.3386-87.

## V.   The Remaining Motions

In light of the dismissal of the Amended Complaint without prejudice, this Court denies the 1/21 Motion, 1/21 TRO Motion, 1/23 Motion, 2/17 Motion, 3/14 Motion, and 3/18 Motion as moot.  This Court makes no findings or conclusions regarding the issues raised in those motions. The denial of those motions is without prejudice to the filing of similar motions, if such motions later become appropriate based on the posture of the instant case.

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint, filed on January 21, 2026 and supplemented on February 17, 2026, is DISMISSED. The dismissal is WITHOUT PREJUDICE to the filing of a second amended complaint that cures the defects identified in this Order. If Plaintiff chooses to file a second amended complaint, she must do so by **May 19, 2026.** The second amended complaint must comply with the terms of this Order. Plaintiff is CAUTIONED that, if she fails to file a second amended complaint by **May 19, 2026,** the Amended Complaint will be dismissed with prejudice on **May 20, 2026.**

Plaintiff's claim against the United States Department of Justice in the Complaint, filed on June 7, 2024, that was previously dismissed without prejudice, is DISMISSED WITH PREJUDICE. In other words, Plaintiff may not include a claim against the DOJ in the second amended complaint.

In addition, this Court RESERVES RULING on Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, filed on January 21, 2026, and Plaintiff's Application for Permission to Participate in Electronic Filing (E-File) (Pro Se Non-Prisoner), also filed on January 21, 2026. If Plaintiff chooses to file a second amended complaint, and at least a portion of it survives the screening process, the merits of the applications will be addressed.

Finally, this Court DENIES AS MOOT Plaintiff's January 21, 2026 filing requesting various forms of relief and Plaintiff's January 21, 2026 motion requesting a temporary restraining order. This Court also DENIES AS MOOT: Plaintiff's "Motion to Accept My Ammended [sic] Complaint Mailed on January 20, 2026 and Received on January 21, 2026," filed on January 23, 2026; Plaintiff's Urgent Motion to Intervene, filed on February 17, 2026; and Plaintiff's Urgent Motion to Intervene, filed on March 4, 2026. Plaintiff's motion requesting various forms of relief, which was filed on March 18, 2026, is also DENIED AS MOOT.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 20, 2026.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge

MILICA BARJAKTAROVIC VS. STATE OF HAWAII, ET AL; CV 24.-00249 LEK-WRP; ORDER:  DISMISSING PLAINTIFF'S AMENDED COMPLAINT WITHOUT PREJUDICE, EXCEPT AS TO THE CLAIMS AGAINST DEFENDANT UNITED STATES DEPARTMENT OF JUSTICE, WHICH ARE DISMISSED WITH PREJUDICE; RESERVING RULING ON PLAINTIFF'S APPLICATION TO PROCEED IN THE DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS AND ON PLAINTIFF'S APPLICATION FOR PERMISSION TO PARTICIPATE IN ELECTRONIC FILING; AND DENYING PLAINTIFF'S OTHER MOTIONS AS MOOT